# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DARRELL MAXEY,<br><br>Defendant. | No. 1:16-CR-00069 JLT SKO<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE UNDER 28 U.S.C. § 3582(c)(2)<br><br>(Doc. 1025) |

Darrell Maxey is a federal prisoner moving for compassionate release under 28 U.S.C. § 3582(c)(2). (Doc. 1025.) He asks that this Court reduce his sentence by 12 months, from 120 months to 108 months because the "sentencing range applicable to Mr. Maxey was subsequently lowered by the United States Sentencing Commission in Amendment 821, made retroactive beginning February 1, 2024." (Doc. 1025 at 1-2.) The Government opposes Maxey's motion, stating that "Maxey is eligible for a reduction technically. Nevertheless, the government requests the Court exercise its discretion to deny Maxey's motion because it has already varied down from the guideline range, to impose a sentence it found sufficient but not greater than necessary., (Doc. 1033 at 1.) Maxey filed a reply and "asks this court to recognize his efforts and grant his motion to reduce his sentence and place him on supervised release." (Doc. 1035 at 4.) For the reason explained below, the motion is **DENIED**.

1

**BACKGROUND**

Maxey was a member of the Dog Pound Gangsters. He was involved in conversations where DPG agreed to murder rival gang murders. Additionally, Maxey engaged in human trafficking and prostituted multiple victims. At least one victim attempted to escape, to which Maxey responded coercively. He assaulted another victim and threatened multiple others with physical violence.

Maxey is currently serving his sentence at a halfway house administered by RRM Sacramento. (*Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited June 20, 2024).) His projected release date is February 14, 2025. *Id*.

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Under the First Step Act of 2018 ("the FSA"), imprisoned defendants may bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). A defendant bears the burden of "establish[ing] his eligibility for compassionate release." *United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022).

Courts must engage in a two-step process to determine if a prisoner is eligible for relief under § 3582(c)(2). *United States v. Dunn*, 728 F.3d 1151, 1155 (9th Cir. 2013). "First, a district court must determine whether a prisoner is eligible for a sentence modification under the Commission's policy statement in U.S.S.G § 1B1.10." *Id.* This is done by "determin[ing] the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing." *Dillon*, 560 U.S. at 827 (alteration in original) (citation and quotation marks omitted). New sentencing guidelines went into effect on November 1, 2023. *See* U.S.S.G. § 1B1.10 (last amended Nov. 1, 2023) ("Amendment 821"). This court refers to the Sentencing Commission's policy statement for

2

guidance.

Second, the court must consider the sentencing factors enumerated in 18 U.S.C. § 3553(a) to determine if "the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Dillon*, 560 U.S. at 827.

## ANALYSIS

### A.     Modification under Amendment 821

Maxey contends that he is eligible for relief under Amendment 821. (See Doc. 1025.) He asserts that, at the time of his sentencing, his "total offense level was 30, he had five criminal history points (which included two status points), and the resulting guideline range was 121-151 months imprisonment," however, the applicable guideline range "was subsequently lowered by the United States Sentencing Commission in Amendment 821" and his "criminal history points [were] reduced from five to three, his criminal history category was reduced from a category III to a category II, and his amended range is 108-135 months."

The government does not dispute that Amendment 821 altered Maxey's guideline range, but notes that the Court already varied downward when imposing Maxey's 120-month sentence. (See Doc. 1033 at 5.) Because Maxey is eligible for relief under Amendment 821, the Court will consider the § 3553(a) factors.

### B.     Consistency with the § 3553(a) Factors

1. Rehabilitation

Maxey contends that he "has a record of post sentence rehabilitation." (Doc. 1025 at 2.) During his time in custody, he has obtained his GED and taken approximately 40 classes. (Doc. 1025 at 6.) He is currently residing in a halfway house administered by RRM Sacramento and is employed cleaning, maintaining, and documenting the use of porta potties in San Francisco. (*Id*.) He also states that he has "a support structure in place" and that 108 months serves the purposes of sentencing. (*Id*. at 7.)

The government responded by stating that Maxey's history and characteristics weigh against a sentence reduction. (Doc. 1033 at 6.) Maxey incurred five disciplinary actions while he

3

1   was in pretrial custody, and three disciplinary actions while in prison. (Doc. 1025 at Exh. A.)
2   These infractions, the government argues, "do not rival the level of the conduct that put Maxey
3   in custody, but they continue a pattern of non-compliance while in custody." (Doc. 1033 at 6.)
4   The government further states that while "[c]lasses are a part of rehabilitation," these are
5   overshadowed by Maxey's disciplinary record while in prison, which "has had significant and
6   recent issues." (*Id*. at 8.) The most recent disciplinary action was for attempted escape on March
7   29, 2024, which resulted in Maxey losing his accumulated good conduct time. (*Id*. at 7.) The
8   government asserts that reducing his sentence now would counteract that loss. (*Id*.)

9         Maxey explains that his escape attempt was a lapse of judgment and that he went to the
10  dentist, rather than to report back to the halfway house as required.  (Doc. 1035 at 2) Though
11  there is no evidence to support this explanation, the Court accepts that this is what occurred.
12  However, the Court disagrees that this was a mere technical violation of his obligations.  Rather,
13  living at the halfway house and complying with the rules of that facility—rather than exercising
14  his own independent judgment as to the whether he should comply with those rules—is one of
15  the most basic obligations imposed on him. Thus, the Court agrees with the government that
16  Maxey's efforts do not offset his disciplinary record and that his rehabilitation efforts are
17  insufficient to merit relief under 18 U.S.C. 3582(c)(2).

18        2.   <u>The need for the sentence imposed</u>

19        The government asserts that "Maxey's offense [sic] are serious and weigh against further
20  reducing his sentence" because he "was a member of a criminal street gang engaged in acts of
21  violence, human trafficking, and gun crimes, to name a sampling." (Doc. 1033 at 6.) Maxey was
22  not just a member, but instead "directed other gang members to follow gang rules, including
23  joining [in] on retaliation against a rival gang when the gang believed rivals shot one of their
24  members. Maxey was not only a pimp, but he was a pimp who was callous, demeaning,
25  threatening, and abusive to the victims." (*Id*.)

26        Maxey responded by stating that "after considering [his] pre-and post-arrest conduct, and
27  other sentencing factors, the court varied downward for two specific reasons, his young age
28  when the offense conduct occurred and his abysmal upbringing, which the court described as

disgraceful and beyond comprehension." (Doc. 1035 at 2.) Maxey further argues that "if the starting point had been 108-135 months, the court likel[y] would have imposed a sentence of no higher than 108 months." (*Id.*) However, Maxey does not provide any support for this contention, nor was the Court able to find anything in the record that would suggest this was the case. Though it is possible that the Court could have deviated downward from 108 months, the Court may have also opted to impose the same 120 months, as that falls squarely within Maxey's new guideline range of 108-135.

As the Government states, "[t]his Court already conducted a thoughtful analysis under Section 3553(a) when it imposed the 120-month sentenced" and "Maxey has offered no new information to reengage the Section 3553(a) factors to warrant a further reduction." (Doc. 1033 at 5.) As such, the Court finds that the 120-month sentence imposed is sufficient but not greater than necessary to reflect the seriousness of Maxey's offenses, to promote respect for the law, and to provide just punishment for the offenses. Thus, the Court finds that granting Maxey's motion for compassionate release would not be consistent with the § 3553(a) factors.

## CONCLUSION

For the reasons discussed above, Maxey's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(2), (Doc. 1025), is **DENIED**.

IT IS SO ORDERED.

Dated:  **July 30, 2024**

UNITED STATES DISTRICT JUDGE